UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JULIA A. BURROW, | ) |
| Plaintiff, | ) No. CV-04-3081-CI ) |
| v. | ) ORDER GRANTING DEFENDANT'S ) MOTION FOR SUMMARY JUDGMENT |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) DISMISSAL ) ) ) |
| Defendant. | ) ) |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 11, 14), submitted for disposition without oral argument on March 21, 2005. Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Richard M. Rodriguez represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 4.) After reviewing the administrative record and the briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment and enters judgment for Defendant.

Plaintiff, who was 59-years-old at the time of the administrative decision, filed an application for Social Security disability benefits on September 24, 1998, alleging onset as of March 3, 1998, due to residuals from cervical disc disease and lumbar surgery, bi-polar disorder, bilateral carpal tunnel, and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSAL - 1

other mental impairments. (Tr. at 66, 70.) Plaintiff had a high-school education and past relevant work as a cashier and clerk at Safeway. She testified she was no longer able to perform that job following a work injury in September 1996. (Tr. at 766, 767.) Following a denial of benefits and reconsideration, a hearing was held before Administrative Law Judge Verrell Dethloff (ALJ). The ALJ denied benefits on November 27, 2000. Four years later, review was denied by the Appeals Council. This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

## ADMINISTRATIVE DECISION

The ALJ concluded Plaintiff had not engaged in substantial gainful activity due to severe impairments including cervical disc disease, status post fusion, and failed back surgery syndrome (lumbar), but those impairments did not meet the Listings. (Tr. at 36.) The ALJ concluded Plaintiff's mental impairments were not severe because they did not meet the durational requirement. (Tr. at 34.) The ALJ further found Plaintiff's date of last insured was December 31, 2003. (Tr. at 31.) He concluded Plaintiff's testimony was credible to the extent she could perform light work with only occasional stooping and crouching and no climbing of ladders, ropes or scaffolds. (Tr. at 37.) He concluded Plaintiff was able to perform her past relevant work as a cashier-checker. Thus, there was no disability found.

## ISSUES

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff asserts the ALJ erred when he (1) improperly rejected the opinion of

the treating physician, and (2) failed to conduct a proper step four analysis.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other

kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made.  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  "The claimant bears the burden of proving that [s]he is disabled."  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals."  *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**ANALYSIS**

1. <u>Treating Physicians</u>

Plaintiff asserts the ALJ failed to consider the combined effects of her physical and mental impairments as found by her treating physicians, including arthritis, fibromyalgia, back and neck problems, fatigue, depression and bipolar disorder.  Plaintiff contends Dr. Harrison, the treating physician for over 2½ years, documented symptoms of depression, anxiety, stress, memory and concentration problems, and Bipolar II disorder.  Plaintiff alleges the ALJ failed to provide any reasons for rejecting Dr. Harrison's opinion; thus, Plaintiff contends it should be credited as a matter of law.

rIn a disability proceeding, the treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition. *See Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989).  If the treating physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  If contradicted, the ALJ may reject the opinion if he states specific,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSAL - 4

legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605. While a treating physician's uncontradicted medical opinion will not receive "controlling weight" unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," Social Security Ruling 96-2p, it can nonetheless be rejected only for "'clear and convincing' reasons supported by substantial evidence in the record." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding the treating physician's opinion. *See Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 604.

2. <u>Mental Providers</u>

The ALJ concluded Plaintiff's mental impairments were not severe. (Tr. at 34.) At step two of the sequential process, the ALJ must conclude whether Plaintiff suffers from a "severe" impairment, one which has more than a slight effect on the claimant's ability to work. To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on

the basis of a medically determinable impairment which can be shown to be the cause of the symptoms.  20. C.F.R. § 416.929.  Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  However, an overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the statutory definition of disabled.  *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994).  Thus, the Commissioner has passed regulations which guide dismissal of claims at step two.  Those regulations state an impairment may be found to be not severe *only* when evidence establishes a "slight abnormality" on an individual's ability to work.  *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (citing Social Security Ruling 85-28). The ALJ must consider the combined effect of all of the claimant's impairments on the ability to function, without regard to whether each alone was sufficiently severe.  *See* 42 U.S.C. § 423(d)(2)(B)(Supp. III 1991).  The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims.  *Bowen v. Yuckert*, 482 U.S. 137, 153-154.

Dr. Harrison's opinion as to the severity of the mental impairments was contradicted by Dr. Vandenbelt's examination and findings.  Thus, specific, legitimate reasons were necessary to support rejection of Dr. Harrison's opinion.  *Flaten*, 44 F.3d at 1463-64.

With respect to Dr. Harrison's opinion, the ALJ noted the following:

> In October 1999, Dr. Harrison co-signed a daily activities report that was completed by Nancy Spracher, RN, MA, who is the claimant's psychotherapist.  Ms. Spracher reported she was currently seeing the claimant once every five

> weeks. She stated that the claimant's mood was often depressed and that she was grieving the loss of employment and lack of energy. She indicated that the claimant was only able to perform light tasks and that she had to rest after participating for short periods of time. She commented that the claimant had trouble comprehending and had concentration and memory difficulties.
>
> I discount this report, as Dr. Vandenbelt's more detailed report does not document significant concentration difficulties. In addition, two November 1998 letters to the claimant's vocational rehabilitation counselor suggest that Dr. Harrison has been functioning as the claimant's advocate. For example, although he noted she was doing fairly well in outpatient follow-up after her hospitalization, he also stated she was not motivated for vocational rehabilitation and "she would be better off to retire."
>
> Dr. Harrison's also [sic] notes generally lack any description of objective findings. The vague comments that the claimant is doing well or doing better are not inconsistent with Dr. Vandenbelt's report, which contains a detailed mental status examination, including objective findings. Dr. Harrison assessed a GAF score of 60 in August 1998, which is consistent with Dr. Vandenbelt's findings. I therefore give significant evidentiary weight to the opinions of Dr. Vandenbelt and the state agency consultants. I accord little weight to Ms. Spracher's own observations, as she is not a medical source, and I further discount her observations for the reasons described with respect to Dr. Harrison.

(Tr. at 33-34, references to case law and exhibits omitted.) The ALJ's reasons, if supported by the record, are specific and legitimate.

Dr. Harrison's notes do not disclose any objective testing; rather, his record is related to Plaintiff's inpatient, partial patient, and outpatient treatment, following her hospitalization for psychiatric problems in July 1998. (Tr. at 150.) At that time, her GAF was assessed at 30, but had been up to 70 during the year. Her GAF at the time of discharge from the partial hospitalization program in August 1998 was 60-70, indicating only mild limitations. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION (DSM-IV),

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSAL - 7

at 32 (1995). Plaintiff, at that time, had reached a therapeutic level of lithium to control the bipolar disorder. (Tr. at 179.) In November 1998, after administering psychiatric tests, examining physician Dr. Vandenbelt concluded there was no psychiatric reason why Plaintiff could not return to work and that she would be better off returning to work. He also noted she was "poorly motivated" to return to work. (Tr. at 244.) The following year in May and June 1999, Dr. Harrison noted Plaintiff was doing much better after an increase in her medication. She reported she was active at home, stable and cheerful. (Tr. at 346, 347.) Mood swings returned during the summer but medication adjustments were made. In November 1999, Dr. Harrison noted Plaintiff was doing much better following additional adjustment of her medication. (Tr. at 341.) Thus, the ALJ's conclusion Plaintiff's mental limitations presented no more than mild limitations is supported by the evidence.

3.   <u>Physical Providers</u>

Plaintiff asserts the ALJ erred when he relied on the opinion of the DDS consultant to find Plaintiff was capable of light work. The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). Cases have upheld rejection of an examining or treating physician based in part on the testimony of a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSAL - 8

non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, at 831, citing *Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Andrews*, 53 F.3d at 1043 (conflict with opinions of five non-examining mental health professionals, testimony of claimant and medical reports); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results).  Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla, but less than a preponderance), independent of that opinion, which supports the rejection of contrary conclusions by examining or treating physicians.  *Andrews*, 53 F.3d at 1039.

From February to May 1997, Plaintiff attended the University of Washington pain clinic. An independent medical exam (IME) performed in June 1997 diagnosed (1) cervical spondylosis, status postoperative anterior cervical discectomy and fusion, C5-6; (2) lumbar strain; (3) status postoperative anterior cervical discectomy and fusion C5-6; (4) status post operative spinal fusion L4 to the sacrum; (5) status postoperative right carpal tunnel release; and (6) left carpal tunnel syndrome.  Plaintiff's condition was fixed and stable and she was capable of performing gainful employment in a light-duty status.  (Tr. at 137.) Plaintiff returned to Safeway as a part-time video clerk that same month.  (Tr. at 586, 755.)  She

remained at that position until February 1998 when she reported exacerbation of stress and pain levels because of her inability to perform well at the job. (Tr. at 766.)

In March 1998, Plaintiff underwent a second IME conducted by Dr. Jessen, three days following her termination from Safeway. Plaintiff complained of headaches and left-hand numbness, bilateral aching in the carpal tunnel area and some aching around the elbows. (Tr. at 138.) Plaintiff was hoping to retrain and return to work in a light duty capacity. (Tr. at 139.) Plaintiff was rated with a permanent partial impairment of Category 3 for cervical spondylosis, an upgrade from a prior rating of Category 2. (Tr. at 148.) The lumbar strain was rated at Category 1 and the lumbar spine at Category 4. The right carpal tunnel syndrome was rated at 10% with no ratable permanent partial impairment for the left carpal tunnel syndrome. Plaintiff was reported to be able to return to full-time work in a light duty capacity. (Tr. at 149.)

A third independent medical examination performed in November 1998 by Dr. Jessen concluded there were insufficient physical findings to support disability and that Plaintiff was able to perform light duty work full time. (Tr. at 259.) Dr. Jessen noted an examination in March 1998 had found no trigger points to support a diagnosis of fibromyalgia. (Tr. at 253.) Plaintiff had normal posture, she was able to heel, toe and tandem walk, there was no focal tenderness or spasm in the cervical or lumbar spine and muscles had normal tone. (Tr. at 257.) Sensory examination revealed decreased touch diffusely in the right upper and left lower extremities. Vibratory tone was decreased in the right side in general and pinprick in the right upper extremity and down the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSAL - 10

dorsal forearm, the third and fourth fingers and thumb. (Tr. at 257-258.) Dr. Jessen noted Plaintiff sang in the choir, was able to walk two miles daily, and exercised regularly with a Theraband.

In September 1998, Marie Boudreaux, M.D., examined Plaintiff and noted she was generally doing well. (Tr. at 211.) Dr. Boudreaux commented Plaintiff felt she was supported in her decision to not return to work at Safeway. That same month, Patrick Waber, M.D., examined Plaintiff as a new patient. She was in no apparent distress and did not complain of pain in her neck or lower back. No abnormal findings were noted. (Tr. at 316.) A follow-up note in December 1998 also did not mention cervical or lumbar limitations. (Tr. at 316.) In June 2000, Dr. Waber examined Plaintiff after noting he had "not seen her for some time." (Tr. at 396.) Plaintiff was experiencing muscle spasm in her neck with decreased range of motion. He diagnosed chronic cervical strain. When he examined her again in August 2000 Plaintiff reported she was doing well, taking Vioxx for neck pain. (Tr. at 395.) In November, she reported doing better after problems with a little fatigue. (Tr. at 393.) There were no complaints of cervical-lumbar pain or spasm.

In June 1999, orthopedist Mohammed Choudry, M.D., examined Plaintiff and noted she was able to heel, toe and tandem walk without difficulty. Plaintiff complained only of numbness and tingling in both hands. (Tr. at 331.) Dr. Choudry concluded Plaintiff could lift 20 pounds frequently, sit for 30-45 minutes each hour, stand 20-30 minutes each hour, had mild to moderate limitations in bending, stooping and crouching, reaching overhead, and decreased dexterity in both hands. Inconsistent with the limitations noted in his report, Dr. Choudry also concluded

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSAL - 11

Plaintiff would have no workplace limitations and could perform light duty. The ALJ rejected the postural and dexterity limitations and accepted the light duty work recommendation, noting the record as a whole did not support the limitations in light of normal neurologic examinations and failure to report musculoskeletal complaints to her treating physicians. (Tr. at 35.)

Plaintiff also objected the ALJ did not mention the opinion by Dr. Weinstein who opined in 1996 that she was permanently restricted to working only five hours per day. (Tr. at 427, 430.) The ALJ confined his review of the medical record to 1997-2000. Date of onset was alleged to be March 1998. However, Dr. Weinstein's opinion was further clarified when he concluded treatment at the pain clinic would improve Plaintiff's condition. (Tr. at 427.) Following that treatment in 1997 and improvement of her condition, Plaintiff was released for work four hours daily, five days a week with transition to full time work over a ten-week period. (Tr. at 588.) Plaintiff returned to work as a video clerk. Thus, Dr. Weinstein's opinion was not material to the extent of Plaintiff's impairments as of the alleged date of onset in March 1998 and any failure to discuss his findings was harmless error. *Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1991) (whether findings of fact are supported by substantial evidence or the law was correctly applied by the ALJ are questions subject to the harmless error standard). Based on the medical record, the ALJ's reliance on the opinion of the DDS consultant was supported by and consistent with the medical evidence. There was no error.

4. <u>New Evidence</u>

Plaintiff submitted new, additional evidence to the Appeals

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSAL - 12

Council, including reports from Drs. Waber and Harrison and Wendy R. Eider, all dated July 11, 2002. Defendant objects to the new evidence, noting the reports by Drs. Waber and Harrison are not signed and the report by Ms. Eider does not include her medical qualifications. (Tr. at 17-22.) A remand to evaluate new evidence is warranted when the new evidence is material and the claimant has good cause for failing to produce the evidence earlier. 42 U.S.C. § 405(g); *Mayes v. Massanari*, 276 F.3d 453 (9th Cir. 2001). The Appeals Council shall consider "new and material" evidence only if such evidence relates to the period on or before the date of the ALJ's decision. *See* 20 C.F.R. S 404.970; *Bates v. Sullivan*, 894 F.2d 1059, 1064 (9th Cir. 1990), *overruled on other grounds*, *Bunnell v. Sullivan*, 947 F.2d 341, 342 (9th Cir. 1991). Given the authentication issues and absent a showing of good cause, this evidence is not material to the instant application and will not direct remand on these grounds. However, such evidence may be the basis for a new application since the date of last insured did not expire until December 2003.

5. Step Four Analysis

Plaintiff contends the ALJ erred when he conducted an inadequate step four analysis under Social Security Ruling 82-62. At step four, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990). Although the burden of proof lies with the claimant at step four, a duty remains with the ALJ to make the requisite factual findings to support his conclusion. SSR 82-62. See 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965. This is done

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSAL - 13

by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e) The claimant must be able to perform: (1) the actual functional demands and job duties of a particular past relevant job; *or* (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61; *see also Pinto v. Massanari*, 249 F.3d 840, 844-845 (9th Cir. 2001).

Plaintiff alleges the ALJ failed to make adequate findings as to her residual capacity, the physical and mental demands of her past relevant work, and a finding that her Residual Functional Capacity (RHC) would permit a return to that work. Based on the limitations noted by the examining physicians, the ALJ concluded Plaintiff had the residual capacity to lift/carry 20 pounds occasionally and ten pounds frequently, stoop and crouch occasionally with no climbing of ladders, ropes or scaffolds. Plaintiff contends this RFC is inadequate because it did not include the limitations set forth by Dr. Weinstein. As discussed previously, those limitations are not deemed material after Plaintiff's "remarkable" (Tr. at 586) progress at the Pain Clinic and in light of the lack of complaints as to cervical/lumbar pain made to treating physicians in 1999 and 2000.

The limitations are consistent with the findings of the DDS consulting physician in 2000. (Tr. at 372-379.) As support for the findings, the DDS physician referenced consistent limitations noted in the IME examination dated March 1998 by Dr. Jessen. (Tr. at 378.) Dr. Jessen noted again in November 1998 that Plaintiff was able to perform full-time light duty work. (Tr. at 259.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSAL - 14

The ALJ concluded Plaintiff could perform her past relevant work as a grocery store clerk, "as performed in the national economy." (Tr. at 39.) Thus, the specific requirements imposed by Safeway for its employees are not material. (Tr. at 667, occasional lifting of 30-50 pounds.) The best source for how a job is generally performed in the national economy is usually the Dictionary of Occupational Titles (DICOT). *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995); 20 C.F.R. §§ 404.1566(d) and 416.966(d); SSR 82-61. The DICOT definition of grocery checker is light duty work with no climbing of ladders, ropes or scaffolds, and only occasional stooping and crouching. DICOT 290.477-018. (Tr. at 124-25.) The ALJ did not need to discuss mental limitations because he found them to be non-severe. The fact there was no separate analysis of the video clerk and office clerk positions is not material as there was a sufficient analysis of Plaintiff's past work as a grocery store clerk, a job she performed successfully for some 31 years. Finally, the application of Grid 201.04 is not warranted because Plaintiff was found to have the ability to return to her past relevant work as a grocery checker, a job not involving direct entry to skilled work with no work history. 20 C.F.R. Pt. 404, Subpt. P, App. 2, 202.04. Accordingly,

**IT IS ORDERED**:

1.  Plaintiff's Motion for Summary Judgment **(Ct. Rec. 11)** is **DENIED.**

2.  Defendant's Motion for Summary Judgment dismissal **(Ct. Rec. 14)** is **GRANTED.** The Complaint and claims are **DISMISSED WITH PREJUDICE.** The evidence discussed, *supra* at 13, may be a basis for a new application, since the date of last insured did not expire

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSAL - 15

until December 2003.

3.   The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. The file shall be **CLOSED** and judgment entered for Defendant.

DATED April 15, 2005.


                S/ CYNTHIA IMBROGNO
            UNITED STATES MAGISTRATE JUDGE